UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY | CIVIL ACTION NO. 6:13-CV-02859 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| MARILYN BROOKS, ET AL. | MAGISTRATE JUDGE HANNA |

### REPORT AND RECOMMENDATION

Pending before the court in this interpleader action is a motion for judgment on the administrative record to establish entitlement to insurance proceeds. [Rec. Doc. 36]. At issue is the contested entitlement to life insurance death benefits between Marilyn Brooks and Wesley Reeves (collectively "Brooks") and Pamela Moore Strother and Paula Moore Corlis (collectively "Strother"). For the reasons that follow, this Court recommends that the benefits currently in the registry of the court be awarded exclusively to Marilyn Brooks and Wesley Reeves.

### Factual and Procedural Background

Metropolitan Life Insurance Company ("MetLife") funded and issued a group life insurance policy as part of a regulated employee welfare benefit plan (the "Plan") sponsored by BP Corporation North America ("BP").[1] As the claim fiduciary, MetLife was charged with administering claims in accordance with the Employment

---

[1] Rec. Doc. 1, p. 2.

Retirement Income Security Act of 1974, 28 U.S.C. § 1001 *et. seq.* ("ERISA") and the documents and instruments governing the plan.[2]

Based on the documents contained in the administrative record, this Court finds that the following facts are uncontroverted:

William W. Reeves was a BP retiree and a participant in the Plan, which was effective on January 1, 2002.[3] As such, he had the right to name his beneficiary on the life insurance policy.[4] The Plan states, in pertinent part:

> **A. Your Beneficiary**
> The "Beneficiary" is the person or persons *you choose* to receive any benefit payable because of your death.
> *You* make *your* choice *in Writing* in a format approved by us. This Beneficiary designation *must be filed with the records for This Plan.*
> *You* may change the Beneficiary at any time by contacting the Plan Recordkeeper. You do not need the consent of the Beneficiary to make a change. The change will take effect as of the date *you Signed it* and will take effect even if you are not alive when it is received.
> * * *
> **D. No Beneficiary at Your Death**
> If there is no beneficiary at your death for any amount of benefits payable because of your death, that amount will be paid to one or more of the following persons who are related to you and who survive you:
>   1. spouse;       3. parent;
>   2. child;        4. brother and sister.

---

[2] *Id.*; see 29 U.S.C. § 1104(a)(1)(D).

[3] Rec. Doc. 31-3, p. 144.

[4] Rec. Doc. 31-3, p. 170.

However, we may instead pay all or part of that amount to your estate.[5]

The Plan also contains the following definitions:

"**Dependent**" means your spouse. . . .

\* \* \*

"**Signed**" means any symbol or method executed or adopted by a person with the present intention to authenticate a record, which is on or transmitted by paper or electronic media which is acceptable to us and consistent with applicable law.

\* \* \*.

"**You**" and "**your**" mean the Employee who is a Covered Person for Personal Benefits. *They do not include a Dependent of the Employee.*[6]

On September 29, 2012, Mr. Reeves passed away after he was struck by a vehicle while a pedestrian.[7] At the time of his death, he had two children, Marilyn Brooks and Wesley Reeves.[8] On or about March 23, 1997, Mr. Reeves executed a power-of-attorney naming his then-spouse, Joyce Reeves, as his agent and attorney-in-fact.[9] On March 6, 2007, he revoked that power of attorney.[10] Mr. Reeves divorced

---

[5] Rec. Doc. 31-3, pp. 170-171. (Emphasis added).

[6] Rec. Doc. 31-3, pp. 162, 164. (Emphasis added).

[7] Rec. Doc. 31-3, p. 67.

[8] Rec. Doc. 31-3, p. 33-37.

[9] Rec. Doc. 31-3, pp. 1-4.

[10] Rec. Doc. 31-3, p. 28.

Mrs. Reeves on June 18, 2008.[11] Mrs. Reeves made a claim to the benefits on November 30, 2012.[12] Mrs. Reeves died on April 30, 2014.[13] There only heirs to her estate, designated in this record, are Pamela Moore Strother and Paula Moore Corlis.

A computer generated screen shot from "HW Benes/Plan," which is not signed by anybody, indicates that, as of December 17, 2012, Joyce Reeves was shown as the primary beneficiary to 100% of the "ARCO GLISIP" plan benefits.[14] While MetLife cites the screen shot for the proposition that the beneficiary designation was made as of December 31, 2001,[15] this Court does not see such an indication on the document anywhere. Rather, what is contained in the administrative record is an excerpt from an e-mail chain on December 27, 2012, repeated in multiple locations during the administrative appeal process that began with MetLife questioning whether an "actual beneficiary designation can be produced" or if there was anything in the "system to indicate a Power of Attorney did the change."[16] The response was as follows:

---

[11] Rec. Doc. 1-11 p.1.

[12] Rec. Doc. 31-3, p. 57-58.

[13] Rec. Doc. 13-2, p. 1.

[14] Rec. Doc. 31-3, p. 5. GSLIP stands for Group Life Survivor Income Plan. [Rec. Doc. 31-3, p. 11]. ARCO is a reflection of a plan that the "Heritage ARCO group had," which apparently employed Mr. Reeves during his lifetime. Cf. Rec. Doc. 31-3, p. 72, 33-36.

[15] Rec. Doc. 1, p. 3.

[16] Rec. Doc. 31-3, pp. 12-13.

> We received the BENE info in our records on 12.31.2001 during the time of conversion when BP was being transitioned over to Hewitt. So we won't be able to tell the exact date when the Bene was Designated *as we do not have any Bene Designation form from the participant.* Please find the attached doc for the screen shot of bene info.[17]

When questioned further about a previously identified date in which a beneficiary was "manually designated on 3/9/2004" and whether a "POA" did that designation, the response was as follows:

> That was sent in error. It was a mistake from my end.
> \* \* \*
> Sorry for the confusion, Beneficiary was received during transition back in 2001. Please consider 2001 date as Beneficiary date.[18]

Again, when specifically questioned about whether the screen shot was the only designation on file and whether there were any "more details on the designation, *such as the date it was submitted by the employee*," the response was that the information designating the beneficiary on the screen shot was received "at the time of conversion when BP moved back to Hewitt in 12/2001."[19] MetLife ultimately reported in its claim inquiry that it did "not have the ability to see if a POA did the [beneficiary] designation."[20]

---

[17]   Rec. Doc. 31-3, pp. 9-10, 12-13. [Emphasis added].

[18]   Rec. Doc. 31-3, pp. 6-8.

[19]   Rec. Doc. 31-3, p. 18.

[20]   Rec. 131-3, p. 71.

Therefore, based on the evidence contained in the administrative record, it is uncontroverted that there is no direct evidence that Mr. Reeves, the "employee" and Plan participant, "signed" a beneficiary designation in a format required by MetLife that was contained on file with the records for the Plan. Rather, what is argued is that to the extent there is a beneficiary designation of Mrs. Reeves, it was done by Mrs. Reeves, fraudulently, while she held the power-of-attorney executed in 1997.[21] However, there is also no evidence in the record or files of MetLife that a beneficiary designation was made by a power-of-attorney – or even if that was an acceptable method of designating a beneficiary given the language of the Plan.

When the Brooks claimants initially made their claims as beneficiaries, MetLife denied their claim on November 12, 2012 stating that "[a]ccording to our records, the latest beneficiary designation on file *that was completed by the decedent* does not name you as the beneficiary of the Plan benefits."[22] A careful review of the entire record shows that this statement was not correct as there is no evidence that the decedent completed any beneficiary designation.

Mrs. Reeves made her claim on November 30, 2012. The Brooks claimants appealed, and the discrepancies described above as well as the allegations of fraud

---

[21]   Rec. Doc. 31-3, pp. 23-28.

[22]   Rec. Doc. 31-3, pp. 48, 50. [Emphasis added].

came to light. MetLife, recognizing that it might have double exposure, invoked this interpleader action.[23] On January 17, 2014, pursuant to an order of the court, MetLife deposited the sum of $16,791.60 in the registry of the court, reflecting the Plan Benefits payable together with interest.[24] After Mrs. Reeves died, her heirs answered as claimants in her stead.[25] Once that occurred, MetLife was dismissed by consent judgment, and the Strother claimants were recognized as the sole heirs of Mrs. Reeves.[26] Thus, the only remaining parties to this litigation are the Brooks claimants and the Strother claimants, who adversely claim entitlement to the Plan Benefits.

## Applicable Law and Analysis

This interpleader action is properly brought pursuant to Fed. R. Civ. P. 22; however, the rule does not confer jurisdiction.[27] Under 28 U.S.C. § 1132(a)(3), a plan fiduciary may bring an action to obtain appropriate equitable relief to enforce the terms of a plan. MetLife, as the plan fiduciary, has standing to bring the action under

---

[23]   Rec. Doc. 31-3, pp. 31-32.

[24]   Rec. Doc. 5.

[25]   The Brooks claimants initially sought dismissal of the Strother claimants as being untimely substituted under Fed.R.Civ.P. 25. [Rec. Doc. 13]. This Court cannot find where there was any ruling on that issue. The record does reflect that the substitution was untimely as the Suggestion of Death was served on September 5 and 13, 2014 and no answer was filed until December 22, 2014; i.e., more than 90 days after the last suggestion of death was served. Cf. Rec. Docs. 13, 14.

[26]   Rec. Doc. 27.

[27]   Fed. R. Civ. P. 82.

ERISA and an interpleader action qualifies as appropriate equitable relief.[28] Therefore, MetLife has properly asserted a claim under 29 U.S.C. §1132(a)(3), and jurisdiction is proper under 28 U.S.C. §1331.

While there was an initial decision rendered by MetLife, that decision was not upheld or reversed in the administrative appeal process; instead, this interpleader action was commenced. Exhaustion is a "nonjurisdictional affirmative defense."[29] In the *Price* case, the court recognized the "consensus view that a fiduciary need not make a final benefits decision [and that] [m]any courts have allowed the use of interpleader in ERISA benefits cases. . . . Almost none of them even mention the possibility of using exhaustion principles to bar interpleader actions. The prevailing view is that '[i]nterpleader is a valuable procedural device for ERISA plans who are confronted with conflicting multiple claims upon the proceeds of an individual's benefit plan.'"[30] This Court finds that this interpleader action is properly brought before the court and further finds that no further exhaustion is required.

---

[28] *Metropolitan Life Ins. Co.v. Marsh,* 119 F.3d 415, 418 (6th Cir. 1997); *Metropolitan Life Ins. Co. v Price;* 501 F.3d 271, 275-277 (3rd Cir. 2007), and cases cited therein.

[29] *Met. Life v. Price,* 501 F.3d at 280.

[30] *Met. Life v. Price*, 501 F.3d at 280, collecting cases. (Citations omitted). Cf. *Life Insurance Co. of North America v. Nears*, 926 F.Supp.86 (W.D. La. 1996), where interpleader was denied on the basis that the plan contained a facility of payment clause granting discretion to the plan administrator to pay benefits to surviving relatives. The MetLife Plan does not contain a similar provision applicable to these facts other than to make payment to the estate, which was not exercised.

The parties appear to agree, then disagree, as to the best method to dispose of this case. One suggestion is remand for an administrative decision. This Court finds, however, that remand of this case, which has been pending in this court for nearly four-and-one-half years, would not be an effective use of resources or an equitable outcome for the parties. Both parties suggest that a decision can be made on the administrative record. One party suggested, but appears to have backtracked, that the court could decide the case by summary judgment. This Court agrees that the decision can be made based on the uncontroverted facts contained in the administrative record; however, disposition could just as easily be made by summary judgment.

The Fifth Circuit has clearly instructed that the first area of inquiry in determining an award of benefits to a beneficiary is the language of the Plan itself. "If the designation [of the beneficiary] on file controls, administrators and courts need look no further than the plan documents to determine the beneficiary."[31]

The Plan requires:

The "Beneficiary" is the person or persons *you choose* to receive any benefit payable because of your death.
*You* make *your* choice *in Writing* in a format approved by us. This Beneficiary designation *must be filed with the records for This Plan.*[32]

---

[31] *Nickel v. Estate of Estes,* 122 F.3d 294, 298 (5th Cir. 1997); *Tucker v. Shreveport Transit Management, Inc.,* 226 F.3d 394, 398 (5th Cir. 2000).

[32] Rec. Doc. 31-3, p. 170.

It is undisputed that there is no evidence that the decedent made his choice of beneficiary, in writing, that is filed with the records for the Plan. It is also undisputed that the definition of "you" and "your" do not include a "dependent" of the employee. Finally, it is also undisputed that, as the decedent's spouse, Mrs. Reeves was a "dependent" until the time of the divorce in 2008. Therefore, by the terms of the Plan, she could not have designated herself as a beneficiary.

Further, the durable power-of-attorney would not have given her that authority under Louisiana law. Under La.Civ. Code Art. 2987:

> A procuration is a unilateral juridical act by which a person, the principal, confers authority on another person, the representative, to represent the principal in legal relations.

The rules applicable to mandate apply to a procuration,[33] and Article 2998 specifically states:

> A mandatary who represents the principal as the other contracting party may not contract with himself unless he is authorized by the principal, or, in making such a contract, he is merely fulfilling a duty to the principal.

This codal provision has been interpreted as requiring express authority from the principal – an authority not contained in the power-of-attorney in the record.[34] In

---

[33] La. Civ. Code Art. 2988.

[34] *Succession of Colville v. Bank One, Louisiana N.A.,* 920 So.2d 397, 403 (La. App. 2nd Cir. 1/25/2006).

*Succession of Colville,* the court found that the power-of-attorney did not specifically provide for self-dealing to allow the representative to name himself as a third-party beneficiary of the conditional obligation of the annuity company to pay benefits upon the principal's death.[35] This Court makes the same finding in this case. Further, there is nothing in the record to suggest that a dependent, otherwise disqualified, could somehow become qualified by way of a durable non-specific power-of-attorney.

Therefore, there is no basis to suggest that the 1997 power-of-attorney somehow applied to allow Ms. Reeves to "fraudulently" change her name to beneficiary status in the 2006-2007 time frame of the divorce. Moreover, the evidence submitted suggests that the beneficiary designation existed in 2001. However, this conclusion is dubious at best.

First, the "screen shot" has no indication of anything that would suggest a time frame when the beneficiary designation would have been made – or if there ever was one made for the policy – with the effective date of January 1, 2002. Second, there is no documentation of any "signed" beneficiary designation, and MetLife tried but admittedly cannot produce any such documentation. Third, the 2001 date was a date to be "considered" as the beneficiary designation date that was essentially made up because of a screen shot that gave no such indication.

---

[35] *Id.*

Considering the foregoing, this Court is left with no evidence of the type required by the Plan to establish Mrs. Reeves as a beneficiary. Therefore, Mr. Reeves died without a beneficiary and, by operation of the clear terms of the Plan, since there was no surviving spouse, the benefits are to be payable to the children – the Brooks claimants.

## Conclusion and Recommendation

Based on the evidence contained in the administrative record, there is no competent evidence, as required by the Plan, to establish that Mrs. Reeves was the designated beneficiary of the decedent at the time of his death. Therefore, the decedent died without a designated beneficiary and, by operation of the Plan, Mr. Reeves's children are entitled to be paid the full benefits in the amount of $16,791.60.

It is therefore recommended that there be judgment rendered in favor of Marilyn Brooks and Wesley Reeves awarding the full sum of $16,791.60 together with any interest accrued thereon, to be shared equally.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on this 6th day of April 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE